IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KEVIN WAYNE GONZALES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 22-cv-42-DES |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kevin Wayne Gonzales ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to

consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence.  *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II. Claimant's Background and Procedural History

On August 20, 2018, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 21, 259-70). Claimant alleges he has been unable to work since September 1, 2016, due to problems with his knees and left shoulder. (R. 259, 266, 325). Claimant was 41 years old on the date of the ALJ's decision. (R. 40, 259, 266). He has a high school education and past work as a termite exterminator, furniture assembler and installer, and construction inspector. (R. 67-68, 326).

Claimant's claims for benefits were denied initially and on reconsideration, and he requested a hearing. (R. 78-148). ALJ Christopher Hunt conducted an administrative hearing and issued a decision on May 14, 2021, finding Claimant not disabled. (R. 40, 48-77). The Appeals Council denied review on December 13, 2021 (R. 10-15), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on February 7, 2022. (Docket No. 2).

## III. The ALJ's Decision

In his decision, the ALJ found at step one that Claimant engaged in substantial gainful activity between October 2019 and December 2020, but that there had been a continuous 12-month period during which he did not engage in substantial gainful activity. (R. 23-24). At step two, the ALJ found Claimant had severe impairments of lumbar degenerative disc disease with radiculopathy, obesity, type 2 diabetes mellitus, and left shoulder arthropathy, but that his hypertension, cellulitis, obstructive sleep apnea, left ankle degenerative changes and heel spur, and stimulant dependence were non-severe. (R. 24). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 27-28).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. He is unable to climb ladders, ropes, or scaffolds. He is unable to be exposed to unprotected heights. He can occasionally reach overhead with the left upper extremity. He can occasionally operate pedals and foot controls.

(R. 28).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Claimant could return to his past relevant work as a construction inspector as generally performed in the national economy. (R. 38-39). At step five, the ALJ made an alternate finding that Claimant could also perform other work existing in significant numbers in the national economy, including solderer, product assembler, and bench assembler. (R. 39-40). Accordingly, the ALJ concluded Claimant was not disabled. (R. 40).

## IV.   Issues Presented

Claimant raises the following points of error in his challenge to the Commissioner's denial of benefits, which the undersigned re-organizes for clarity: (1) the ALJ failed to conduct a proper analysis pursuant to *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996) at step four because he failed to account for all of Claimant's impairments and limitations in the RFC and failed to sufficiently determine the demands of Claimant's past relevant work (Docket No. 16 at 3-6); and (2) the ALJ failed to resolve a conflict between the VE's testimony and the reaching requirement identified by the Dictionary of Occupational Titles ("DOT") for the jobs identified as steps four and five (*id.* at 4-6). The Court finds no reversible error in the ALJ's decision.

V.     **Analysis**

    A.     **ALJ Sufficiently Performed the *Winfrey* Analysis**

Claimant asserts the ALJ improperly performed the analysis required by *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996) at step four. (Docket No. 16 at 4-5). The ALJ is required to make specific findings in three phases at step four. *Winfrey,* 92 F.3d at 1023. In phase one, the ALJ evaluates the claimant's mental and physical RFC. *Id*. In phase two, the ALJ examines the demands of the claimant's past relevant work. *Id*. Finally, in phase three, the ALJ ascertains "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] limitations found in phase one." *Id*. (citing Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Although the burden of proving disability remains with the claimant at step four, the ALJ nonetheless has a duty "of inquiry and factual development." *Henrie v. United States Dep't of Health and Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993). Claimant asserts the ALJ erred in assessing the RFC at phase one and in examining the demands of his past relevant work at phase two.

        1.     **Phase One – RFC Determination is Supported by Substantial Evidence**

            a.     **Mild Limitations in the Paragraph B Criteria**

If a claimant has a medically determinable mental impairment, the ALJ must assess the claimant's limitations attributable to such mental impairment(s) in the following four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). These areas of mental functioning are known as the "paragraph B" criteria. 20 C.F.R. pt. 404, subpt. P., app. 1 § 12.00(E). The ALJ rates the claimant's degree of limitation in each of the "paragraph B" criteria using a five-point

scale: none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 402.1520a(c)(4), 416.920a(c)(4). "The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis." *Wells v. Colvin,* 727 F.3d 1061, 1068 (10th Cir. 2013). If the ALJ rates the claimant's degree of functional limitation as "none" or "mild," he will generally find the claimant's mental impairment(s) not severe at step two. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the mental impairment is severe, the ALJ will then determine at step three whether such impairment meets or equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2) & pt. 404, subpt. P., app. 1 ("the listings").

In assessing Claimant's stimulant dependence under the "paragraph B" criteria, the ALJ found that Claimant had a mild limitation in the mental functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (R. 25-26). The ALJ thus found Claimant's stimulant dependence non-severe and explained that such impairment "does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities." (R. 25).

Claimant asserts the ALJ erred by failing to account for his step-two findings of mild limitations in the "paragraph B" criteria. (Docket No. 16 at 5). However, an ALJ is not necessarily bound by his step-two findings when determining a claimant's RFC because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three. *Id*.

6

In his written decision, the ALJ considered Plaintiff's stimulant dependence as part of the RFC assessment by discussing Claimant's behavioral health treatment notes between July 2019 and November 2019. (R. 34-25). Specifically, the ALJ noted Claimant's unremarkable mental status examinations, improving psychiatric condition over the course of treatment, excellent condition at discharge from behavioral health treatment, and the fact that Claimant was discharged because he completed his treatment objectives. *Id.* Thereafter, the ALJ omitted any psychologically-based limitations from the RFC. (R. 28). Although the ALJ could have been more thorough in his RFC assessment by specifically stating Claimant's stimulant dependence did not result in any work-related limitations, the Court finds the ALJ's discussion of the evidence sufficient for the Court to follow his reasoning, especially considering that Claimant's stimulant dependence was consistently noted as being "in remission," (R. 806, 815, 818, 906, 908), there are no other mental-health related treatment notes or diagnoses in the record, and Claimant did not allege disability due to a mental impairment. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on technical perfection."). Moreover, the Tenth Circuit "has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps." *Suttles v. Colvin,* 543 F. App'x 824, 826-27 (10th Cir. 2013) (unpublished) (citing *Beasley v. Colvin,* 520 F. App'x 748, 754 (10th Cir. 2013); *DeFalco-Miller,* 520 F. App'x 741, 747-48 (10th Cir. 2013)).

### b.      Chronic Pain

Claimant next argues the ALJ failed to consider his chronic pain. (Docket No. 16 at 6). "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan,* 987 F.2d 1482, 1490-91 (10th Cir. 1993). Claimant's assertion is belied by the record. The ALJ discussed Claimant's subjective symptoms and limitations related to his back and knee pain; summarized the findings of his treating, consultative, and reviewing physicians; and thoroughly analyzed the work-related functional limitations caused by Claimant's back and knee impairments. (R. 29-38). In discussing the opinion evidence, the ALJ found the state agency physician's opinion that Claimant could perform less than medium work only partially persuasive and specifically explained that he <u>further</u> limited Plaintiff to less than light work due, in part, to Claimant's chronic pain. (R. 37-38). Thus, the ALJ considered all the relevant evidence related to Claimant's chronic pain and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Claimant fails to point to any evidence other than his own assertions to support the additional limitations he claims. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [he is] disabled."); *see also Hamilton v. Sec'y of Health & Hum. Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992) ("[a claimant's] testimony alone cannot establish a nonexertional impairment"). The longitudinal evidence in the record does not reflect further limitations; there is no medical source opinion in the record that identifies limitations greater than those included in the RFC assessment; and the ALJ thoroughly considered the evidence of record. Because Claimant points to no evidence the ALJ overlooked, his arguments

8

amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioners.") (quotation and citation omitted).

## 2. Phase Two – Demands of Past Relevant Work

Claimant asserts the ALJ failed to determine the physical demands of his past relevant work as a construction inspector.[1] (Docket No. 16 at 4). "Past relevant work" is defined as the claimant's ability to perform either (1) the "actual functional demands of job duties of a particular past relevant job"; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993) (quotation omitted). Phase two of the step-four analysis requires the ALJ to "determine the physical and mental demands of the claimant's past relevant work," and make "specific findings" supporting that determination. *Winfrey*, 92 F.3d at 1023.

At the administrative hearing, the ALJ asked Claimant what he did for "Apex Geo Science, Inc." (R. 67). Claimant replied that he was an "inspector," and explained his duties consisted of "doing inspections on Walmart's [sic] and McDonald's that were being built . . . doing the concrete

---

[1] In a conclusory and undeveloped argument, Claimant asserts "[T]he ALJ failed to make any findings at all about the mental capacity" of claimant's past relevant work as a construction inspector, which is a skilled job. (Docket No. 16 at 5). Because Claimant does not develop any argument or cite any case law on this issue, the argument is waived. *See Bronson v. Swensen,* 500 F. 3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised or, or are inadequately presented, in an appellant's opening brief."). Accordingly, the Court's analysis is limited to the ALJ's analysis of the physical demands of Claimant's past relevant work. Nonetheless, the Court will note that any error the ALJ may have made with respect to the mental demands of Claimant's construction inspector job at step four would be considered harmless error because the jobs the ALJ and the VE identified at step five are all unskilled. Even Claimant himself appears to recognize this. *See* (Docket No. 16 at 5) ("Mild limitations would probably not cause problems with jobs that are unskilled.").

testing and making sure that the ground was put back to the way that it was before we started with ground compaction." *Id*. When the ALJ asked Claimant how much he lifted when working at Apex, he replied "I would lift anywhere from 5 pounds to 30 pounds." (R. 67-68). The ALJ then asked the VE to describe this job. (R. 68). The VE testified that Claimant's inspector job was a construction inspector and that the DOT described such job as "a light skilled job, SVP 6," but that Claimant performed it at the "medium physical capacity." (R. 68). The ALJ then posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE indicated a hypothetical person with Claimant's age, education, and work history could perform Claimant's past work as a construction inspector "as generally performed," noting that such job would be eliminated "as performed." (R. 68-69.) The VE also identified alternative jobs such hypothetical person could perform, including solderer, product assembler, and bench assembler. (R. 69). The ALJ adopted the VE's testimony that Claimant could perform these jobs and determined that they existed in significant numbers in the national economy. (R. 39-40).

Claimant asserts the ALJ did not elicit sufficient testimony about the specific duties of Claimant's construction inspector job, and thus the ALJ's conclusion that he could perform his past relevant work was not supported by substantial evidence. (Docket No. 16 at 4). The Court finds the ALJ's questioning of Claimant at the administrative hearing and the VE's testimony regarding the exertional level of the job was sufficient to establish the demands of Claimant's past relevant work as a construction inspector. The ALJ is permitted to rely on VE testimony at phase two of the step-four analysis. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("We may use the services of vocational experts . . . to obtain evidence we need to help us determine whether [a claimant] can do [his] past relevant work."); *see also Adcock v. Commissioner, SSA,* 748 F. App'x 842, 847 (10th Cir. 2018) (holding that the ALJ may approvingly cite and rely on a VE's testimony

in support of his step-four findings at phases two and three). Moreover, the ALJ referred to the DOT in his decision to determine the exertional demands of the construction inspector job. (R. 39). An ALJ is also permitted to rely upon the DOT when determining the demands of past relevant work as it is generally performed in the national economy. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("We may use . . . other resources, such as the [DOT] . . . to obtain evidence we need to help us determine whether [a claimant] can do [his] past relevant work."); *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1349 (10th Cir. 1990) (finding the ALJ applied the proper legal standards by referring to the DOT to determine the exertional demands of a bookkeeper position). The record is therefore not "devoid" of evidence of the demands of Claimant's past relevant work such that remand is required. *Cf. Westbrook v. Massanari,* 26 F. App'x 897, 903 (10th Cir. 2002) (unpublished) (finding remand under *Winfrey* necessary when the record is "devoid of even any mention of the demands of past relevant work[.]") (citing *Henrie*, 13 F.3d at 360-61)). The ALJ's conclusions were appropriate. Thus, the ALJ complied with phase two of the step-four analysis by determining the demands of Claimant's past relevant work and making specific findings supporting that determination. *See Winfrey,* 92 F.3d at 1023.

In any event, even assuming *arguendo* the demands of Claimant's past relevant work were not sufficiently developed, the ALJ concluded that Claimant could return to his past relevant work as a construction inspector *as generally performed* in the national economy. (R. 39). This finding makes any further inquiry into the actual demands of the job unnecessary. *See* SSR 82-61, 1982 WL 31387, at *2 (1987) (providing that a claimant will be found "not disabled" if it is determined that he retains the RFC to perform "(1) [t]he actual functional demands and job duties of a particular past relevant job; or (2) [t]he functional demands and job duties of the occupation as

11

generally required by employers throughout the national economy."); *see also Andrade,* 985 F.2d at 1050.

B. **No Apparent Conflict Between the VE's Testimony and the DOT**

Claimant next asserts that the ALJ relied on the VE's testimony at steps four and five without first resolving a conflict between the VE's testimony and the DOT. (Docket No. 16 at 4-6). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). Plaintiff asserts a conflict exists because the RFC limits him to occasional reaching overhead with his left upper extremity, while his past relevant work as a construction inspector and all the alternative jobs the ALJ and VE identified at step five require frequent reaching. DOT § 182.267-010 (construction inspector),[2] DOT § 813.684-026 (solderer), DOT § 706.687-010 (product assembler), DOT § 706.684-042 (bench assembler). Plaintiff contends the ALJ erred by failing to elicit further testimony from the VE explaining this conflict.

The Tenth Circuit's decision in *Segovia v. Astrue,* 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) is persuasive and instructive. In *Segovia,* the claimant was limited to "occasional overhead reaching," and VE testified she could perform two jobs requiring "frequent reaching." 226 F. App'x at 804. The court explained that the Selected Characteristics of Occupations Defined

---

[2] The VE testified that the DOT code for the construction inspector job was "182.267-010." (R. 68). However, when referring to this job in his decision, the ALJ listed the DOT code as "182.827-010." (R. 39) There is no job listing for the DOT code used in the ALJ's decision, but the DOT code for the construction inspector job is 182.267-010, as the VE correctly stated. Because the Court can easily determine which job the ALJ was referring to, the ALJ's typographical error was harmless. *See, e.g., Cochran v. Colvin,* No. CIV-13-1238-F, 2015 WL 1308381, at *6 (W.D. Okla. Mar. 23, 2015) (finding typrodphical error in cited DOT number harmless).

in the Revised Dictionary of Occupational Titles (the "SCO")[3] defines reaching as "extending hand(s) and arm(s) in any direction" but does not "separately classify overhead reaching." *Id*. Therefore, the court reasoned that "even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching." *Id*. Because the VE was aware of the claimant's overhead reaching limitations, testified that she could perform the jobs he identified, and testified that his opinion was consistent with the DOT, the court found no apparent conflict between the VE's testimony and the DOT. The court explained, in such circumstances, "the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categories apply to this specific case." *Id.* The court also noted that the DOT descriptions for the jobs the VE identified did not indicate they "predominantly involve[d] overhead reaching rather than other types of reaching." *Id.* Accordingly, the Tenth Circuit held that the VE's testimony constituted substantial evidence supporting the ALJ's decision denying benefits. *Id.*

Similarly, the VE in this case: (1) was aware of Claimant's overhead reaching limitation because the ALJ included the limitation of "occasional overhead reaching with the left upper extremity" in the hypothetical question he presented to her (R. 68-69); (2) testified Claimant could perform his past relevant work as a construction inspector as generally performed as well as the alternative jobs of solderer, product assembler, and bench assembler, all of which require frequent reaching (R. 69); and (3) understood she needed to advise the ALJ if her testimony conflicted with the DOT and explain the basis for her opinion, but identified no such conflict (R. 64). Moreover, the Court has reviewed the DOT descriptions for the four jobs identified and finds no indication that overhead reaching is involved at all, much less frequently. *See* DOT § 182.267-010

---

[3] The SCO is a companion publication to the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("In making disability determinations, we rely primarily on the DOT (including its companion publication the SCO) for information about the requirements of work in the national economy.")

13

(construction inspector), DOT § 813.684-026 (solderer), DOT § 706.687-010 (product assembler), DOT § 706.684-042 (bench assembler). In sum, there is no apparent conflict between the Claimant's RFC limitation of "occasional overhead reaching with the left upper extremity" and the frequent reaching required by the jobs the VE identified at steps four and five, the ALJ had no obligation to elicit further testimony from the VE, and the VE's testimony that Claimant could perform such jobs constitutes substantial evidence supporting the ALJ's decision. *See Deaton v. Comm'r of Social Sec. Admin.,* No. CIV-16-369-KEW, 2018 WL 1468257, at *3-4 (E.D. Okla. Mar. 26, 2018) (finding no error in the ALJ's reliance at step five on jobs involving frequent reaching despite an RFC limitation of occasional reaching overhead); *Bigby v. Colvin,* No. CIV-14-540-SPS, 2016 WL 1255734, at *7 (E.D. Okla. Mar. 30, 2016) (same).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this  31st  day of July, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE